UNITED STATES DISTRICT COURT                O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| RODOLFO DAVILA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. L-08-74 |
| | § | |
| FEDEX TRADE SYSTEMS, INC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant FedEx Trade Networks Transport & Brokerage, Inc.'s ("Defendant") Motion for Summary Judgment.  [Dkt. No. 43].  Upon due consideration of the pleadings, responsive filings, and governing law, the Court **GRANTS** Defendant's Motion.

## I.     BACKGROUND

### A.     Pertinent Facts

Defendant is a wholly-owned subsidiary of FedEx Trade Networks, Inc., and performs activities related to international shipping, including customs brokerage and freight forwarding. [Dkt. No. 43, Ex. A].  Plaintiff Rodolfo Davila ("Plaintiff") is a male individual currently employed by Defendant.  Defendant has a facility in Laredo, TX, from which customer shipments sent to and from Mexico are coordinated.  [*Id*.].  On March 3, 2003, Defendant hired Plaintiff to work at its Laredo facility as a release and classification analyst.  [Dkt. No. 43, Ex. B at 28, 32].  In this position, Plaintiff worked with customs officials and completed the paperwork necessary to move shipments from Mexico to the United States.  [Dkt. No. 43, Ex. A & Ex. B at 32-33].  From at least October 2005 until January 2009, Defendant generally assigned certain customers to certain release and classification employees, though the assignments were not exclusive.  [Dkt. No. 43, Ex. A, ¶ 6].  Plaintiff was paid on an hourly basis.  [Dkt. No. 43, Ex.

A].  His pay was not based on the number of customers he served or the number of shipments he processed.  [*Id*.].  In 2004, Plaintiff's job title changed to release and classification specialist, though his duties did not change.  [Dkt. No. 43, Ex. B at 40-41].

In October 2005, Defendant hired Richard Garza ("Garza") as the general manager of its Laredo facility.  [Dkt. No. 43, Ex. A, ¶ 2].  Garza thereby became responsible for the hiring, compensation, disciplining, and firing of Defendant's employees.  [Dkt. No. 43, Ex. B at 40].  After Garza became general manager, his supervisor directed him to reduce overtime hours in order to control labor costs.  [Dkt. No. 43, Ex. A, ¶ 7].  Garza complied by reducing the overtime hours worked by employees, and requiring that all employees obtain permission to work overtime.  [*Id*].  Plaintiff's overtime hours decreased each year.  In 2005, Plaintiff worked approximately 319 overtime hours.  [Dkt. No. 43, Ex. B at 109].  In 2006, Plaintiff worked approximately 266 overtime hours.  [*Id*.].  In 2007, Plaintiff worked approximately 159 overtime hours.  [*Id*. at 111].

In October 2006, Garza gave Plaintiff a performance appraisal.  [Dkt. No. 43, Ex. A, ¶ 8].  During this appraisal, Garza "counseled [Plaintiff] on several performance issues, including communicating with customers and timely processing shipments."  [*Id*.].  Thereafter, in July 2007, Garza issued a written warning to Plaintiff, as his performance had not improved since his appraisal.  [*Id*., ¶ 9].  Additionally, Defendant had received complaints from customers about Plaintiff.  [*Id*.].  At least one customer threatened to use a different broker if Defendant "did not take corrective action."  [*Id*.].  On another occasion, Plaintiff refused to assist Defendant's facility in Romulus, Michigan, and disregarded instructions related to a shipment for a company called Canadian Distribution Services.  [*Id*.].

Based on customer complaints related to Plaintiff, Plaintiff's performance deficiencies,

and also in order to better balance the workload, Garza removed four customer accounts from Plaintiff and reassigned them to other release and classification employees.  [*Id*. at ¶ 10; Dkt. No. 43, Ex. B at 92-93].   These four accounts were assigned to three of Defendant's female employees; namely Maria Alvarez, Mayany Galindo, and Blanca Cisneros.  [Dkt. No. 43, Ex. B. at 94-97].

In July of 2007, Plaintiff received a letter from Garza, indicating that a coworker had accused him of harassment.  [Dkt. No. 46, Ex. A & Dkt. No. 43, Ex. B at 80].   Plaintiff and another male employee, Samuel Esparza, were accused of violating Defendant's anti-harassment policy by making offensive remarks towards a female employee.  [Dkt. No. 46, Ex. A & Dkt. No. 43, Ex. B at 80].   Plaintiff denied that he harassed anyone.  [Dkt. No. 43, Ex. B at 82]. Nonetheless, after Defendant conducted an investigation, the allegations against Plaintiff were substantiated.  [*Id*.].  Plaintiff was consequently given a written warning, and also placed on paid suspension for three weeks.  [*Id*. at 80, 90].

## B.    Procedural History

On May 26, 2008, Plaintiff filed a complaint against Defendant, asserting gender discrimination claims under sections 703 and 704 of the Civil Rights Act of 1964.  [Dkt. No. 1]. Specifically, Plaintiff asserts that Defendant "removed and reassigned Plaintiff's most lucrative and oldest accounts generating overtime hours worked by Plaintiff to female employees with less seniority and qualifications than Plaintiff."  [*Id*., ¶ 25].   Also, Plaintiff asserts that Defendant's workplace rules are applied to his female coworkers in a less stringent manner than they are to Plaintiff.  [*Id*, ¶ 28].   As a result of this alleged discrimination, Plaintiff claims that he "sustained the economic injuries losses (sic) consisting of lost overtime pay due to the removal of his accounts, humiliation and mental anguish manifesting itself in loss of appetite, insomnia,

irritability as well as the loss of his personal and professional reputation."  [*Id.*, ¶ 36].  Further, Plaintiff argues that Defendant's gender-based actions were wanton and malicious, and he thus also seeks an award of punitive or exemplary damages.  [*Id.*, ¶ 37].

On October 26, 2009, Defendant filed the pending Motion for Summary Judgment, asserting that Plaintiff cannot proceed with his gender discrimination claim.  [Dkt. No. 43]. Plaintiff subsequently filed a Response to Defendant's Motion.  [Dkt. No. 46].  In turn, Defendant filed a Reply to Plaintiff's Response.  [Dkt. No. 47].

## II.     DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The initial burden, borne by the moving party, requires a showing to the Court of the basis for the motion, as well as an identification of the portions of the record "which [the moving party] believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All facts and evidence must be taken in the light most favorable to the non-moving party.  *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

The evidentiary standard for summary judgment motions is provided by Federal Rule of Civil Procedure 56(e).  The rule states in part:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent

> to testify on the matters stated.  If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.

FED. R. CIV. P. 56(e)(1).  Moreover, in responding to a properly supported motion for summary judgment, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial."  FED. R. CIV. P. 56(e)(2).  If a party does not so respond, summary judgment should be entered.  *See id.*

### B.      Standard Governing Gender Discrimination Claims

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff can prove Title VII sex discrimination through either direct or circumstantial evidence.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007); *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

A discrimination claim premised on circumstantial evidence will survive summary judgment only if the plaintiff advances a prima facie case of such discrimination.  *Turner*, 476 F.3d at 345 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)); *Rutherford v. Harris County*, 197 F.3d 173, 179-80 (5th Cir. 1999).  To make such a showing, a plaintiff must establish that he: "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably."  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d

507, 512-13 (5th Cir. 2001) (internal quotes omitted) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).   A plaintiff "must initially establish a prima facie case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thereby creating a rebuttable presumption of intentional discrimination."   *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 142 (2000).   Once a *prima facie* case has been established by the plaintiff, the burden shifts to the defendant to "rebut the presumption of discrimination by producing evidence . . . of a legitimate, nondiscriminatory" motive.   *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).   If the defendant meets this burden, the "mandatory inference of discrimination" created by the *prima facie* case is rebutted; the burden returns to the plaintiff, who must demonstrate that the defendant's proffered reason for discrimination is mere pretext.   *McDonnell Douglas*, 411 U.S. at 804.   In evaluating the plaintiff's attempt to meet his burden on the ultimate question, the factfinder, in addition to considering evidence that the employer's reasons were pretextual, "may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom. . . .'"   *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)).   Throughout the sequence of burden-shifting, however, the plaintiff retains the ultimate burden of persuasion.   *Burdine*, 450 U.S. at 256.

Plaintiff has presented no direct evidence of discrimination, and provides only his affidavit.[1]   Thus, Plaintiff must rely completely on circumstantial evidence to prove unlawful discrimination.

---

[1]  Attached to his Response, Plaintiff has presented several documents, seemingly offered for the Court's consideration.  [*See* Dkt. No. 46, Ex. B & Ex. C].  However, with the exception of several e-mails and a letter addressed to Plaintiff from the U.S. Equal Employment Opportunity Commission ("EEOC"), none of the documents are discussed in Plaintiff's affidavit.  Further, the documents are not authenticated in any form.  *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991).  These documents are therefore inadmissible as summary judgment evidence.  However, Defendant did not object to the Court's consideration of such documents.

C.      **Prima Facie Case**

The parties do not dispute that Plaintiff can satisfy the first and second factors of the test for establishing a *prima facie* case of gender discrimination.  Of course, as a male individual, Plaintiff is a member of a protected class.  And neither of the parties disputes that Plaintiff is qualified to work for Defendant as a release and classification specialist.  However, Defendant urges summary judgment on the basis that Plaintiff has failed to make out a prima facie case on the third and fourth factors.  Each of Plaintiff's claims on these factors will be examined in turn.

1.      **Adverse employment action — alleged reassignment of Plaintiff's customer accounts and overtime hours to Defendant's female employees**

"To demonstrate the occurrence of an adverse employment action, a plaintiff must show that he suffered an 'ultimate employment decision.'"  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citation omitted).  "Ultimate employment decisions include actions affecting job duties, compensation, or benefits, such as hiring, granting leave, discharging, promoting, and compensating."  *Davis*, 383 F.3d at 319 (citing *Banks v. East Baton Rouge Parish School. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).  In this case, Defendant avers that no factual basis exists for attributing the reduction of Plaintiff's overtime hours to the reassignment of customer accounts.[2]  The Court agrees.  Plaintiff has presented no evidence to show that the reassignment of his customer accounts caused him to lose overtime hours.  While he attaches his own affidavit to his response, it offers little more than conclusory claims that he suffered discrimination.  At best, his affidavit states that he was "stripped of the accounts which were giving [him] the overtime hours" and suspended for three weeks under the pretext that he

---

[2] Attached to its Motion for Summary Judgment, Defendant provided several documents, including: a document purported to be Defendant's employee handbook; a document entitled "Individual Performance and Contribution Discussion Form"; two inter-office memorandums addressed to Plaintiff from Garza; and what appears to be a letter addressed to Plaintiff from Garza.  However, these documents are not authenticated in any form.  That being the case, they are inadmissible, but there has been no objection filed.

violated Defendant's harassment policy.  [Dkt. No. 46, Ex. A, unnumbered p. 5].  Absent a factual basis to support his claim, however, the Court cannot conclude that the reassignment of customer accounts was an adverse employment decision.

Nevertheless, it is undisputed that Plaintiff's overtime decreased from 319 hours in 2005 to 266 hours in 2006.  [Dkt. No. 43, Ex. B at 109].  His overtime then decreased to approximately 159 hours in 2007.  [*Id*. at 111].  Because Plaintiff was compensated on an hourly basis, the Court finds that Plaintiff's alleged loss of half his overtime hours would necessarily also affect his compensation.  Thus the loss of such hours is sufficient to raise a fact issue that Plaintiff suffered an adverse employment action.[3]

### 2.    Disparate Treatment

But Plaintiff cannot satisfy the fourth element of his *prima facie* case: he has failed to show that similarly situated female coworkers were treated more favorably.  Plaintiff puts forth three actions which he claims show he was treated differently from similarly situated females. Each alleged action will be addressed.

### a.    *Overtime hours*

First, Plaintiff claims that while his overtime hours were reduced, those of his female counterparts were increased.  In his declaration, Garza states that he reduced the overtime hours for all employees at the facility.  [Dkt. No. 43, Ex. A, ¶ 7].  In response, Plaintiff states through his affidavit that his supervisor, Jaime Cerda, took overtime hours away from him and gave the hours to his female coworkers.  [Dkt. No. 46, Ex. A, unnumbered p. 2].  But Plaintiff offers no evidence to substantiate this claim.  Indeed, during his deposition, he conceded that he did not know how many overtime hours the female employees at issue worked.  [Dkt. No. 43, Ex. B at

---

[3] The Court is careful to note that a reduction in hours will not always amount to an adverse employment action but for purposes of this summary judgment motion, a reduction by half is sufficient to raise a fact issue.

124].  He also acknowledged that, in 2006, Garza approached Plaintiff and other employees, and explained that Defendant needed to cut overtime for all employees.  [*Id*. at 110].

Plaintiff also states that an analysis of Defendant's overtime records shows that Defendant did not reduce the amount of overtime incurred by its employees.  [Dkt. No. 46, Ex. A, unnumbered p. 3].  However, Plaintiff has not offered any summary judgment evidence to support this allegation.  Additionally, during his deposition, Plaintiff stated that the overtime hours for a female employee, referred to as "Ms. Hernandez", went up after July 10, 2007.  [Dkt. No. 43, Ex. B at 111].  But Plaintiff's support for this statement is vague and conclusory.  In explaining how he knew Hernandez received more overtime, he merely stated "they were having overtime when [he] left, and they were saying that that's with overtime."  [*Id*.].  He also states that the basis for believing her hours went up is because she said so.  [*Id*.].  As for another female employee, Galindo, Plaintiff stated that she received more overtime hours, but the basis of his testimony appears to be her statement to him that she said she was working hard.  [*Id*.].  Plaintiff's testimony is insufficient to show that female employees received increased overtime while his decreased.  Thus, Plaintiff cannot persuasively claim that Defendant's female employees received his overtime hours, or that they were treated more favorably.

### 3.    Maria Serna's position as a release and classification specialist

Next, Plaintiff appears to claim that Maria Serna received preferential treatment because, upon being hired, she was automatically given the title "release and classification specialist," whereas he was not promoted to this position until six years after he began to work for Defendant.[4]  Specifically, during his deposition, Plaintiff stated as follows:  "[I]'ve been there since (sic) six years.  My only promotion is specialist, and I've been working several years with the same specialist name, and then there's some – another girl with two years, and automatically

---

[4] Plaintiff made this claim in his deposition in response to Defendant's questions.

they gave them (sic) the specialist."  [Dkt. No. 43, Ex. B at 115-16].  Plaintiff does not address this claim in his affidavit.  Without more, the Court cannot find that Plaintiff and Maria Serna were similarly situated.  Thus, this claim fails.

4.   **Application of harassment and attendance policies towards Plaintiff and his female coworkers**

Finally, Plaintiff asserts that Defendant treated female employees differently in applying its harassment and attendance policies.  [Dkt. No. 143, Ex. B at 121].  With regard to Defendant's application of its harassment policy, Plaintiff argues, in essence, that he was suspended with pay for making offensive remarks toward a female co-worker, while female employees were not disciplined for making comments about themselves and/or to each other. [*Id*. at 116].  However, Plaintiff cannot show that he and Defendant's female employees were both similarly situated, or that female employees were treated more favorably.  According to Plaintiff, Galindo and other female employees call themselves names.  [Dkt. No. 43, Ex. B at 119].  Specifically, he asserted, during his deposition, that Galindo "made deprecating comments about her gender and physical disability[,]" and that "she always said that she was ugly and that she was fat and that she was huge," and that such comments were made to other female employees.  [Dkt. No. 43, Ex. B at 85-86].  Plaintiff also claims that female employees called themselves "princess" and "bombon," a word he understood to mean mushroom.  [*Id*. at 117]. However, these remarks are clearly distinguishable from those he allegedly made against a female employee: he made disparaging remarks against a female employee and was consequently placed on paid suspension and received a warning, while the female employees made comments about themselves.  Moreover, Plaintiff concedes that the female employees did not file a complaint about remarks other female employees made to one another.  [*Id*. at 121]. The acts of Plaintiff and the female employees are clearly distinguishable, thus he has not shown

that they received preferential treatment in Defendant's application of its harassment policy.

In further support of his argument as to this issue, Plaintiff complains that female employees exchanged e-mails about a male employee, Jaime Cerda, and that they flirted with him. [*Id*. at 117]. But he concedes that Cerda did not file a complaint with Defendant about the emails; thus, he cannot show that he is similarly situated to either the female employees who were flirting or to the female employee who filed a harassment claim against him. [*Id*. at 121].

Finally, in his Complaint, Plaintiff alleges that his female counterparts are not disciplined for their tardiness. [Dkt. No. 1, ¶ 35]. However, the Complaint does not assert or specify whether such constitutes discrimination or an adverse employment action. And Plaintiff does not address this particular claim in either his summary judgment response or supporting affidavit. As far as the Court can gather, Plaintiff's deposition testimony suggests that he believes that Defendant's application of the attendance policy constitutes discrimination. During his deposition, Plaintiff was asked to specify rules that are applied different to his female counterparts. [Dkt. No. 43, Ex. B at 128]. He replied that his female counterparts are tardy, and are not disciplined for it. [*Id*. at 128-129]. Nonetheless, Plaintiff has provided no summary judgment evidence showing that he was disciplined as a result of being late. During his deposition, Plaintiff explained that, on one occasion, he was merely told not to arrive late. In pertinent part, Plaintiff stated as follows: "Well, I arrived like 15 minutes late, and [Garza] called me and said, 'What happened?' I told him, 'Well, I came late,' and he said, 'Well, please try not to do it,' and I said okay." [Dkt. No. 43, Ex. B at 129]. Since Plaintiff has failed to show he was disciplined for being tardy, he cannot show that his female counterparts were treated more favorably in Defendant's application of its attendance policy.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

Final Judgment shall issue under separate cover.

IT IS SO ORDERED.

SIGNED this 22nd day of January, 2010, in Laredo, TX.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**

12 / 12